UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL HESSE,

Plaintiff,

v.

COUNTY OF SACRAMENTO, et al.,

Defendants.

No. 2:21-cv-1931 WBS KJN P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a former county jail inmate, now proceeding pro se. The motion for summary judgment filed by County defendants[1] is before the court. As set forth below, the undersigned recommends that the motion be granted.

Background

County defendants' motion for summary judgment was filed on September 25, 2023, while plaintiff was represented by counsel. (ECF No. 46.) On September 26, 2023, the parties were informed that all motions would be submitted on the papers, Local Rule 230(l), and that plaintiff should file an opposition within 21 days from the minute order. (ECF No. 47.) No opposition was filed by plaintiff's counsel.

[1] "County defendants" are County of Sacramento, Lynn Billet, Phoebe Foo, and Dr. Andrew Ho. Defendant Dr. Sanga is represented by separate counsel, and her motion for summary judgment (ECF No. 55) remains pending.

On October 24, 2023, plaintiff was ordered to file an opposition within fourteen days and was warned that failure "to file an opposition may be deemed a waiver of any opposition to the granting of the motion." (ECF No. 48.) No opposition was filed by plaintiff's counsel.

On November 20, 2023, counsel moved to withdraw as counsel for plaintiff,[2] which was granted on December 29, 2023. (ECF Nos. 52, 59.) In addition, plaintiff, now proceeding pro se, was ordered to show cause, within fourteen days, why the County defendants' motion should not be granted. Plaintiff did not file an opposition or otherwise respond to the order.

On January 17, 2024, plaintiff was provided notice of the requirements for opposing a motion for summary judgment,[3] and granted an additional fourteen days in which to file a response to the December 29, 2023 order to show cause. (ECF No. 60.) Plaintiff did not file a response to the order to show cause or file an opposition to the motion.

Although it appears from the file that plaintiff's copy of the January 17, 2024 order was returned, plaintiff was properly served. It is the plaintiff's responsibility to keep the court apprised of his current address at all times. Pursuant to Local Rule 182(f), service of documents at the record address of the party is fully effective.

Legal Standards for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the non-moving party bears the burden of proof at trial, the moving party need

---

[2] On December 20, 2023, defendant Nurse Practitioner Stephenye Burnett was dismissed. (ECF No. 58.)

[3] Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

only prove that there is an absence of evidence to support the non-moving party's case." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings and is required to tender evidence of specific facts in the form of affidavits or admissible discovery to support its contention that a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers., Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). "The very mission of the summary judgment procedure is

to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments; see also Matsushita, 475 U.S. at 587.

In resolving a summary judgment motion, the court examines facts cited by the parties from the record including "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. The court must draw all reasonable inferences from the underlying facts in favor of the nonmoving party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Neilsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (citation omitted).

No opposition has been filed. Where a party fails to oppose a motion for summary judgment, "Rule 56 is clear that although a court may deem facts admitted in the exercise of its discretion, it need not do so." Warkentin v. Federated Life Ins. Co., 594 F. App'x 900, 902-03 (9th Cir. 2014) (alteration in original); see Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment ("[T]he court may choose not to consider [a] fact as undisputed, particularly if the court knows of record materials that show grounds for genuine dispute"). A court, however, is not authorized to automatically grant summary judgment to a defendant solely because a plaintiff fails to oppose the motion. Cristobal v. Siegel, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994); Martinez v. Stanford, 323 F.3d 1178, 1182 (9th Cir. 2003).

Where, as here, a party does not challenge the facts asserted by the moving party, the non-moving party may be deemed to have admitted the validity of those facts. See Fed. R. Civ. P. 56(e)(2). Further, Local Rule 230(l) provides that the "[f]ailure of the responding party to file an

opposition or to file a statement of no opposition may be deemed a waiver of any opposition to the granting of the motion and may result in the imposition of sanctions." Id.

Unverified Complaint

Plaintiff alleges that despite being informed of plaintiff's prior medical procedure to his right finger by Dr. Tocchi, and the order that the finger must remain splinted, or plaintiff's finger would become deformed, defendants Billet, Ho, and Foo were deliberately indifferent to plaintiff's serious medical needs by failing to order his splint and failed to call Dr. Tocchi to determine why plaintiff was ordered to keep his finger splinted. (ECF No. 1 at 6.) As a result, plaintiff now suffers a permanent deformity in his right ring finger, and severe pain and emotional distress. In his second cause of action, plaintiff raises a Monell claim,[4] alleging that the County of Sacramento knew or should have known about policies requiring jail staff to remove medical devices from detainees without medical consult or approval. (ECF No. 1 at 8.) Such policies resulted in jail medical staff unlawfully taking away and refusing to apply a necessary medical device required to prevent a permanent injury, and the County ratified and encouraged defendants Billet, Ho, and Foo to continue their course of misconduct. In his third cause of action, plaintiff raises a state law negligence claim based on the refusal of defendants Billet, Foo, and Ho to allow plaintiff to have a splint on his right finger. (ECF No. 1 at 9.)

County Defendants' Statement of Undisputed Facts

1. Plaintiff was booked into Sacramento County Jail on August 20, 2020. (Declaration of Dr. Kendrick Lee ("Lee Decl.") ¶ 14; Declaration of Kerry Latu ("Latu Decl.) ¶ ¶ 6 -7; Ex. A.)

2. Plaintiff was seen by defendant Phoebe Foo, F.N. on August 20, 2020 at booking. The records for this visit do not reference that plaintiff presented with a splint on, or that it was removed. He was cleared to be booked at jail. (Declaration of Kathy Wainscott ("Wainscott Decl.") ¶ ¶ 7- 8; Ex. A at 1-6; Lee Decl. ¶ 15.)

3. On August 21, 2020 plaintiff was seen by defendant and Nurse Practitioner Lynn Billet in the Jail medical facility. She cleaned and dressed the wound, prescribed Naproxen, and

[4] Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).

encouraged passive movement to prevent contracture. (Wainscott Decl. ¶ ¶ 7-8; Ex. A at 20-23; Lee Decl. ¶ 16.)

4. On August 27, 2020, plaintiff was seen by defendant Billet who examined his finger. She encouraged wound care and observing for signs and symptoms of infection. (Wainscott Decl. ¶ ¶ 7-8; Ex. A at 15-17; Lee Decl. ¶ 17.)

5. On September 5, 2020 LVN Natasha Schreffler advised plaintiff that he should try moving his finger as much as possible so that contractures would not form. (Wainscott Decl. ¶ ¶ 7-8; Ex. A at 24; Lee Decl. ¶ 18.)

6. On September 7, 2020, plaintiff was seen by Dr. Sanga. She took a complete history and examined his finger. Her plan was wound care with warm soaks in hibiclens daily until the symptoms resolved; elevation of R finger and continued passive flexion/extension exercises daily; an x-ray of R hand/finger; and an orthopedic consult that week. (Wainscott Decl. ¶ ¶ 7- 8; Ex. A at 25-29; Lee Decl. ¶ 19.)

7. On September 11, 2020, plaintiff had an orthopedic consult with defendant Dr. Andrew Ho. Dr. Ho took a history from the patient, including the fact that the wound was almost healed, the pain and swelling was improved but the finger was stiff. He performed a clinical examination of the patient’s hand, which revealed that he had mild edema but no redness or drainage. He measured a flexion contracture of 45 degrees PIP and 20 degrees DIP. He reviewed the x-rays with the patient and recommended continued wound care until the wound was healed. He recommended aggressive finger stretching and range of motion exercises for improving the finger contracture. (Wainscott Decl. ¶ ¶ 7-8; Ex. A at 30-32; Lee Decl. ¶ 21.)

8. On September 16, 2020, plaintiff was seen by Nurse Practitioner Stephenye Burnett. Burnett performed a physical examination including the right hand and finger and noted that plaintiff was able to flex and extend the finger but not fully. Burnett changed dressings, and informed plaintiff to massage the finger regularly to help maintain mobility. Burnett explained there was no physical therapy available at the jail, so plaintiff would need to do his own exercises to help return mobility in his right 4th digit. Burnett told plaintiff that he could use lotion from the commissary to massage into his finger when exercising it. (Wainscott Decl. ¶ ¶ 7-8; Ex. A at

32-34; Lee Decl. ¶ 22.)

9. Plaintiff was released from Sacramento County Jail on October 29, 2020. (Latu Decl. ¶ ¶ 6-7; Ex. A.)

10. Upon release, plaintiff confirmed that he received all of his property with him at booking by signing a Property and Clothing Record form. (Latu Decl. ¶ ¶ 6-7; Ex. A.) Plaintiff also signed a Release Screening form marking that he denied having an injury, medical problem, or complaint of pain that occurred while in the Main Jail and that he had no complaint about his treatment at the Main Jail or regarding a jail employee. (Latu Decl. ¶ ¶ 6-7; Ex. A.)

11. According to Dr. Lee, splinting plaintiff's finger would not have been consistent with the standard of care. (Lee Decl. ¶ 32.)

12. According to Dr. Lee, splinting an abscessed finger is recommended during the early days of treatment. After initial treatment with antibiotics and abscess drainage and irrigation, splinting is not recommended. Once the infection begins to resolve, mobilization with finger exercises is strongly indicated to prevent later finger stiffness or contracture. (Lee Decl. ¶ 27.)

13. Jail medical staff, including County defendants, recommended plaintiff exercise his finger. (Lee Decl. ¶ ¶ 15-19; ¶ ¶ 21-23; Wainscott Decl. ¶ ¶ 7-8; Ex. A.)

14. Nine days prior to his arrest, plaintiff was seen by Dr. Tocchi on August 11, 2020. On exam, Dr. Tocchi noted that Hesse's finger was now in a flexed position and tender with extension. Dr. Tocchi encouraged range of motion exercises and advised Hesse buddy tape the finger to help with range of motion improvement. (Lee Decl. ¶ 13; Declaration of Ashley Calvillo "Calvillo Decl." ¶ 3; Ex. B.)

15. At his deposition, plaintiff testified that Dr. Tocchi informed plaintiff during his August 11, 2020 visit that plaintiff no longer needed to wear the splint, and instead emphasized regaining mobility. (Lee Decl. ¶ 33; Calvillo Decl. ¶ 5; Ex. C (Pl. Dep. at 48).)

16. Plaintiff testified that he exercised his finger approximately 50 times daily. (Lee Decl. ¶ 36; Calvillo Decl. ¶ 5; Ex. C (Pl. Dep. at 59).)

17. Dr. Tocchi was deposed and testified that at the August 11, 2020 visit, Dr. Tocchi

would have informed plaintiff that he did not need the splint at that point in treatment. (Lee Decl. ¶ 33; Calvillo Decl. ¶ 6; Ex. D (Tocchi Dep. at 55-56.)

18. According to Dr. Lee, finger contractures are not always preventable, even with diligent exercise and may require surgery to correct it.[5] (Lee Decl. ¶ 36.)

19. Plaintiff's records at booking, and upon release from Jail, do not reference any splint, or a splint being removed. Plaintiff signed the Property and Clothing record upon release from Jail indicating that he had received all of his property. (Latu Decl. ¶ ¶ 6-7; Ex. A.)

20. Kendrick Lee, MD, FACS, is Board Certified in Orthopedic Surgery with a Certificate of Added Qualification in surgery of the hand. (Lee Decl. ¶ 2.)

21. According to Dr. Lee, all of plaintiff's medical care rendered by County defendants, to a reasonable degree of medical certainty, conformed with the standard of care. (Lee Decl. ¶ 7.)

22. According to Dr. Lee, to a reasonable degree of medical certainty, the care and treatment provided by the Sacramento County's Jail medical providers did not cause plaintiff's injuries. (Lee Decl. ¶ 8.)

23. According to Dr. Lee, the absence of splinting after the first week post-surgery and the repeated recommendation for finger motion were fully within the standard of care. Dr. Lee further opines that if the jail medical staff had encouraged use of a splint for the finger, such splinting would have been outside the standard of care. (Lee Decl. ¶ 32.)

24. According to Dr. Lee, physical therapy is not mandated by the standard of care for plaintiff's situation. Plaintiff was advised that formal physical therapy was not available at the jail so he needed to comply with recommended self-therapy exercises. (Lee Decl. ¶ 35.)

25. According to Dr. Lee, it cannot be said with probability that plaintiff would have been any better off with the contracture had he received formal physical therapy while incarcerated. (Lee Decl. ¶ 35.)

26. According to Dr. Lee, motion exercise is the most important treatment to lessen the

---

[5] County defendants also claim Dr. Tocchi agreed with fact 18, citing Carvillo Decl. ¶ 5 Ex. C p. 69. However, Exhibit C contains pages from plaintiff's deposition and does not include a page 69. Further, while Exhibit D contains pages from Dr. Tocchi's deposition, it does not include a page 69.

risk of contracture. (Lee Decl. ¶ 36.)

27. According to Dr. Lee, buddy taping is not a requisite or a standard of care requirement. It is ancillary treatment compared to the primary treatment of motion exercise. (Lee Decl. ¶ 36.)

28. According to Dr. Lee, there was nothing that buddy taping would have accomplished that diligent self-exercise would not have achieved. Since self-exercise did not work for plaintiff, buddy taping was unlikely to have worked as well. (Lee Decl. ¶ 36.)

29. According to Dr. Lee, if plaintiff was diligently exercising his finger as he testified in his deposition, most reasonable practitioners would not have recommended buddy taping since self-exercise is more effective. (Lee Decl. ¶ 36.)

Discussion

Expert Testimony

County defendants provided the expert medical testimony of Kendrick E. Lee, a board-certified hand surgeon, who performed an expert review of the medical care and treatment for plaintiff's right ring finger that plaintiff received while housed at the Sacramento Jail. Dr. Lee reviewed plaintiff's medical records from the Sacramento County Jail medical facility; Dr. Lee Tocchi, and Adventist Health and Rideout Hospital. (ECF No. 46-6 at 2.) Dr. Lee also reviewed the deposition testimony of plaintiff and Dr. Lee Tocchi, as well as plaintiff's complaint in this action. (ECF No. 46-6 at 2.) In Dr. Lee's professional opinion, the care and treatment provided by the Sacramento County Jail's medical providers, "to a reasonable degree of medical certainty, conformed to the standard of care," and "did not cause Mr. Hesse's claimed injuries." (ECF No. 46-6 at 2.) Dr. Lee opined that "the absence of splinting after the first week post-surgery and the repeated recommendations for finger motion were fully within the standard of care," and "if the jail medical staff had encouraged use of a splint for the finger, that splinting would have been outside the standard of care." (ECF No. 46-6 at 7.)

Further, Dr. Lee opined that "[t]he most important treatment to lessen risk of contracture is motion exercise," yet "contractures are not always preventable, even with diligent exercise, and must be surgically corrected as occurred here." (ECF No. 46-6 at 8.) Similarly, the "failure to

provide buddy tape in the jail did not cause or worsen the contracture and did not cause the need for Mr. Hesse to have surgery." (ECF No. 46-6 at 9.)

The undersigned finds Dr. Lee's education, training, credentials, and experience qualifies him as an expert. Dr. Lee's specialization as a board-certified hand surgeon makes him uniquely qualified to opine on whether or not a splint or buddy tape was required for plaintiff's right finger at the time he was booked into the jail and held therein, and to evaluate the medical treatment provided for plaintiff's right ring finger by defendants Billet, Foo, and Dr. Ho. Further, Dr. Lee's testimony set forth in his declaration is both relevant and admissible. Therefore, the undersigned accepts Dr. Lee's opinion as expert testimony under Rule 702 of the Federal Rules of Evidence as to whether the medical care provided by defendants Billet, Foo and Dr. Ho was appropriate and met the standard of care. "[E]xperts are allowed to testify to opinions without having firsthand knowledge, so long as it is permissible in their discipline." Trujillo v. Cty. of Los Angeles, 751 F. App'x 968, 970-971 (9th Cir. 2018) (citation omitted).

Fourteenth Amendment Claims

As discussed below, defendants are entitled to summary judgment on plaintiff's Fourteenth Amendment claims.

Deliberate indifference to a serious medical need violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. See McGuckin, 974 F.2d at 1059.

Where, as here, the inmate is a pretrial detainee rather than a convicted prisoner, the inmate's rights derive from the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. See Gibson v. County of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). While a deliberate indifference test still applies to a pretrial detainee's claim, it is an objective deliberate indifference test, rather than the subjective deliberate indifference test applicable to a prisoner's claim. See Gordon v. County of

Orange, 888 F.3d 1118, 1122 & n.4 (9th Cir. 2018).

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1125. With regard to the third element, the defendant's conduct must be objectively unreasonable -- "a test that will necessarily turn[ ] on the facts and circumstances of each particular care." Id. (citations and internal quotation marks omitted). The four-part test articulated in Gordon requires the inmate to prove more than negligence, but less than subjective intent --something akin to reckless disregard. Id.

Except where the type of conduct required by the particular circumstances is within the common knowledge of laymen, the standard of care can only be proven by expert testimony. See Hutchinson v. U.S., 838 F.2d 390, 392 (9th Cir. 1988). Thus, "[w]hen a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." Id.

Here, plaintiff provided no opposition, no evidence, and no expert testimony to rebut Dr. Lee's expert opinion. The appropriate treatment for the injury to plaintiff's right finger is not something within a layperson's common knowledge. Thus, plaintiff was required to provide expert testimony to rebut Dr. Lee's opinion that the medical care provided by defendants Billet, Foo and Dr. Ho fell within the standard of care. Plaintiff did not.

Dr. Lee opined that no splint or buddy tape was required to treat plaintiff's right ring finger injury while he was housed in the jail, the lack of the splint and buddy tape did not cause plaintiff's injuries, and the medical treatment by medical defendants Billet, Foo and Dr. Ho fell within the standard of care. Thus, there remains no material dispute of fact that the medical treatment provided or not provided by any of these three defendants was objectively

unreasonable, and such defendants are entitled to summary judgment on plaintiff's Fourteenth Amendment claims.

State Law Negligence Claim

Plaintiff's state law negligence claim also fails.

In California, to prevail on a medical malpractice claim, a plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of [their] profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Hanson v. Grode, 76 Cal. App. 4th 601, 606 (1999) (internal quotation and citation omitted). "The standard of care in a medical malpractice case requires that medical service providers exercise that degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances." Barris v. County of Los Angeles, 20 Cal.4th 101, 108 n.1 (1999). Such standard of care can only be proven by expert testimony. Lattimore v. Dickey, 239 Cal. App. 4th 959, 968, 191 Cal. Rptr.3d 766 (2015) (The standard of care in a California medical malpractice case must be shown by expert testimony); Hutchinson, 838 F.2d at 392. Thus, when a defendant health care provider moves for summary judgment and supports the motion with an expert declaration that his or her conduct met the community standard of care, the defendant is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence. Munro v. Regents of University of California, 215 Cal. App. 3d 977, 984-985, 263 Cal. Rptr. 878 (1989).

As set forth above, Dr. Lee is board certified in hand surgery and qualifies as an expert herein. Dr. Lee opined that at the time plaintiff was housed in the jail, he was not required to wear a splint or use buddy tape, the failure to use such items did not cause plaintiff's injuries, and that the medical care provided by defendants Billet, Foo and Dr. Ho was within the standard of care. Plaintiff provided no expert testimony to rebut Dr. Lee's opinion. Thus, defendants Billet, Foo and Dr. Ho are entitled to summary judgment on plaintiff's state law negligence claims.

////

////

Monell Claims

Finally, plaintiff's Monell claim is unavailing.

To establish municipal liability, a plaintiff must prove that: (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to a plaintiff's constitutional right; and (4) the policy was the "moving force" behind the constitutional violation. Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011). The plaintiff must demonstrate that this policy or custom "reflects deliberate indifference to the constitutional rights of [the municipality's] inhabitants," and there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Castro, 833 F.3d at 1073, 1075 (quoting City of Canton v. Harris, 489 U.S. 378, 385, 392 (1989)); Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994) (holding that "municipal defendants cannot be held liable because no constitutional violation occurred").

Here, the undersigned found that the actions or omissions of defendants Billet, Foo and Dr. Ho did not result in a constitutional violation, so there can be no finding of County liability under Monell because such violations are "contingent on a violation of constitutional rights." Scott, 39 F.3d at 916. Therefore, plaintiff's Monell claim fails as a matter of law.

Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The September 29, 2023 motion for summary judgment (ECF No. 46) be granted; and

2. Defendants County of Sacramento, Lynn Billet, Phoebe Foo, and Dr. Andrew Ho be dismissed from this action with prejudice. See Local Rule 110; Fed. R. Civ. P. 41(b).

3. This action remains pending as to defendant Dr. Sanga.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings

////

////

and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 7, 2024

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/hess1931.msj.Co